Angela Ciccolo
(To be admitted *pro hac vice*)
General Counsel, NAACP
4805 Mt. Hope Dr.
Baltimore, MD 21215
Tel: (410) 580-5792
Fax: (410) 358-9350

Brian S. Kabateck (SBN 152054)
Richard L. Kellner (SBN 171416)
KABATECK BROWN KELLNER LLP
644 South Figueroa Street
Los Angeles, California 90017
Tel: (213) 217-5000
Fax: (213) 217-5010
rlk@kbklawyers.com

Austin Tighe (Admitted
   *pro hac vice*)
FEAZELL & TIGHE, LLP
6300 Bridgepoint Parkway
Bridgepoint 1, Suite 220
Austin, Texas 78730
Tel: (512) 372-8100
Fax: (512) 372-8140
austin@feazell-tighe.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE (NAACP), on Behalf of Itself and All Others Similarly Situated, as well as on Behalf of the General Public and Acting in the Public Interest,<br><br>Plaintiff,<br><br>vs.<br><br>HSBC Mortgage Corporation (USA), a corporation, and HSBC Bank USA, N.A.,<br><br>Defendants. | CASE NO.<br><br>CV09-01759 AHM (MANx)<br><br>**ORIGINAL CLASS ACTION COMPLAINT FOR:**<br><br>1. **VIOLATIONS OF THE FAIR HOUSING ACT;**<br>2. **VIOLATION OF THE EQUAL CREDIT OPPORTUNITY ACT;**<br>3. **VIOLATIONS OF THE CIVIL RIGHTS ACT, 42 U.S.C. §§ 1981, 1982**<br><br>**JURY TRIAL DEMANDED** |

1

Original Class Action Complaint

Plaintiff, on behalf of itself and a Class consisting of all its members and based upon information and belief, states as follows:

## INTRODUCTION

1.      The National Association for the Advancement of Colored People (the "NAACP") brings this action in its organizational and representative capacity and as a class action seeking injunctive and other relief against numerous mortgage lenders who are engaged in institutionalized, systematic racism in connection with its members' purchase of residential mortgage loans.  The pervasiveness of this discrimination has been documented in numerous empirical studies that all confirm that African Americans are substantially more likely to receive higher-rate residential mortgage loans than Caucasian borrowers *with the same qualifications*.

2.      Defendants HSBC Mortgage Corporation (USA) and HSBC Bank USA, N.A. have engaged in disparate treatment of African Americans, and have adopted facially neutral policies and practices that have a disparate discriminatory impact on African Americans in residential mortgage lending.

3.      With respect to the Defendant lenders, the Class is comprised of African Americans: (a) who received subprime mortgage loans even though they qualified for more favorable conventional mortgage loans in the prime market or (b) whose loans were approved based upon the low initial interest rate but who would not qualify based upon the interest rate that would be charged when the rate was scheduled to adjust upward within the first four years of the loan.

4.      It is beyond dispute that the African American community has long been the victim of discriminatory banking practices.  Generations of African Americans have been deprived the opportunity to participate in the American dream by banks that refused to give them mortgage loans simply because of the color of their skin, or placed them in unfavorable loans that decimate them financially.

2

5.     HSBC Mortgage Corporation (USA) and HSBC Bank USA, N.A., target the African American community by capitalizing on their relative lack of experience in dealing with banking institutions and mortgage loans.  Upon information and belief, HSBC Mortgage Corporation (USA) and HSBC Bank USA, N.A. are aware of the African American community's susceptibility to predatory lending practices, but nonetheless engage in policies and procedures that they know will result in African Americans being steered toward less favorable loans.

6.     Indeed, in 2006, the Center for Responsible Lending, a non-profit research organization, found that even when income and credit risk were accounted for, African Americans were *still* 31% to 34% more likely to receive higher rate subprime loans, and that the disparities between them and Caucasians with the same risk factors were "large and statistically significant."

7.     In another study, the National Community Reinvestment Coalition determined that lending institutions in six major metropolitan areas engaged in "pervasive discriminatory and predatory practices", including making high cost subprime loans to higher-qualified African-Americans 54% of the time, compared to 23% of the time for Caucasians, even when Caucasian applicants were similarly, and often *less*, qualified.

8.     Similarly, the Federal Reserve Board concluded that African Americans were more likely to pay higher prices for mortgages than their Caucasian counterparts. The United States Inspector General cited that report as showing "significant" differences, making it "clear" that African Americans were "much more likely to get higher-priced loans" than Caucasians.  For example, a 2006 study by ACORN showed that African Americans were 3.6 times more likely than whites to be put into a subprime purchase loan and 6.1 times more likely to be refinanced into such a loan.

9.     These statistical disparities are not mere happenstance, but instead result from the systematic and predatory targeting of African Americans, as well as facially

3

neutral lending policies and practices that have a disparate adverse impact on African Americans.

10.    As described below, HSBC Mortgage Corporation (USA) and HSBC Bank USA, N.A. have engaged in disparate treatment by issuing the Class mortgage loans under less favorable terms than equally situated Caucasians.  In addition, Defendants have instituted specific, identifiable policies and practices that have a disparate adverse impact on African Americans.

11.    The NAACP brings this class action seeking declaratory and injunctive relief based upon the Fair Housing Act, the Equal Credit Opportunity Act and the Civil Rights Act.

### THE PARTIES

12.    Plaintiff National Association for the Advancement of Colored People ("NAACP") is the nation's oldest civil rights organization.  Its history and accomplishments are well known.  Its mission includes ensuring economic equality and eliminating racial hatred and discrimination, including racial discrimination in housing. The NAACP is a non-profit and non-partisan organization, headquartered in Baltimore, Maryland.

13.    The NAACP, individually and on behalf of its members, has been injured by the Defendants complained of herein.  The NAACP has representational standing to pursue this claim as a class action on behalf of its members.  Its request for injunctive and declaratory relief does not require participation of the members, even though the members have standing to seek this same relief in their own right.  In fact, the members, or any one of them, are in real and imminent danger of suffering immediate or threatened injury as a result of these predatory lending policies, which said members could directly pursue.  Also, the interests the NAACP seeks to protect are germane to its stated purpose of ensuring economic equality and eliminating racial hatred and discrimination, including racial discrimination in housing.  Finally, although seeking

4

Original Class Action Complaint

injunctive and declaratory relief for a class of its members, the NAACP also has standing to sue in its own right because Defendants' discriminatory mortgage lending policies and practices tend to frustrate the association's mission, reduce contributions and divert its resources, including through investigation, advocacy and counseling, and litigation costs.

14.     Members of the NAACP have been injured in fact by Defendant as complained herein.

15.     Defendant HSBC Mortgage Corporation (USA) is organized under the laws of the State of Delaware, with its principal place of business in DePew, New York. It originates mortgages in the forty-eight contiguous United States.  HSBC Mortgage Corporation (USA), is a wholly owned subsidiary of HSBC Bank USA, N.A., which is organized under the laws of the State of New York, with its principal place of business in Buffalo, New York.  HSBC Mortgage Corporation (USA) and HSBC Bank USA, N.A., which do business throughout California and the United States, are herein referred to as "HSBC" or "Defendants".

## JURISDICTION AND VENUE

16.     This is an action for violation of 42 U.S.C. § 3601 *et seq*. (Fair Housing Act), 15 U.S.C. § 1691 *et seq*. (Equal Credit Opportunity Act) and 42 U.S.C. § 1981 *et seq*. (Civil Rights Act).  This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question).

17.     Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(b) and (c) because Defendants are corporations subject to personal jurisdiction in this district.

## CLASS ACTION ALLEGATIONS

18.     The NAACP brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(2) on behalf of the NAACP, its members and the members of the Class described below.

Original Class Action Complaint

19.     Excluded from the Class are Defendants, their officers, directors and employees, members of their immediate families and each of their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or have had a controlling interest; members of the Plaintiff organization who are not African American; and any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

20.     This class action is comprised of the following:  African Americans who were sold subprime mortgage loans from HSBC even though they qualified for more favorable conventional mortgage loans from HSBC, and African Americans who would not qualify under HSBC's loan guidelines if HSBC had evaluated the loan under the anticipated adjusted rates during the first four years of the loan, rather than the low initial or "teaser" interest rate.

21.     This action is properly maintainable as a class action as to each Class member because:

22.     Numerosity:  The members of the Class for whose benefit this action is brought are dispersed throughout the state and nationwide, and are so numerous that joinder of each members of the Class is impracticable.

23.     Typicality:  The NAACP has representative standing to bring the class action for the relief requested, its interests do not conflict with the interests of any members of the Class, and was subject to the same discriminatory treatment and policies and procedures that resulted in a disparate and discriminatory impact on the members of the Class.

24.     Common Questions of Law and Fact Predominate:  The questions of law and fact common to the members of the Class predominate over any questions affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

6

a. The nature and scope of Defendants' policies and procedures relating to the marketing of subprime residential mortgage products to consumers;

b. Whether Defendants have subjected their African American consumers and members of the NAACP to disparate adverse treatment by imposing terms and conditions for residential mortgage loans that resulted in their paying more for their loans than similarly situated Caucasian customers;

c. Whether Defendants marketed and/or determined the type of loan, interest rate, duration or other terms of a loan based in whole or in part on the race of the applicants;

d. Whether Defendants unlawfully steered applicants to less favorable credit products than they qualified for on the basis of race;

e. Whether Defendants' policies and practices of providing financial incentives to mortgage brokers to steer consumers to subprime residential mortgage products in lieu of prime residential mortgage products, while at the same time having a policy and practice of not providing a meaningful review of residential mortgage loan applications to determine if the applicant qualifies for prime residential mortgage products, constitutes facially neutral policies that create a disparate discriminatory impact against African Americans;

f. Whether Defendants discriminated against the Class by providing them with subprime residential mortgage loans when they qualify for prime residential mortgage loans offered by the Defendants or one of their related entities;

7

Original Class Action Complaint

g.  Whether Defendants have a statutory obligation to evaluate the ability of each applicant to repay the loan based on the interest rate during the life of the loan and not only on the initial or "teaser" rate;

h.  Whether Defendants' policies and practices of evaluating each applicant's ability to repay a loan based *only* on the initial rate and not the rate that will be adjusted upward constitutes facially neutral policies that create a disparate discriminatory impact against African Americans;

i.  Whether Defendants have any legitimate business reason for the aforementioned policies and practices that can be achieved by alternative means that have a less discriminatory impact against African Americans;

j.  Whether Defendants' intent in their discriminatory policies and procedures was racially motivated; and

k.  Whether Defendants' policies and practices have proximately caused damages and injury to Plaintiff and the Class entitling them to injunctive and declaratory relief, and the measure of that relief.

25.    Adequacy of Representation:  The NAACP will fairly and adequately protect the interests of the Class and have retained counsel competent and experienced in class action litigation, including class actions within the Central District of California.  The NAACP has no interests antagonistic to, or in conflict with, the Class that the NAACP seeks to represent.

26.    Injunctive/Declaratory Class:  Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive relief proper with respect to the Class.  Fed. R. Civ. P. 23(b)(2).

Original Class Action Complaint

27.   HSBC has engaged, and continues to engage, in disparate treatment by issuing residential mortgage loans to African Americans under less favorable terms than equally situated Caucasians.   In addition, HSBC has instituted specific, identifiable policies and practices that have a disparate adverse impact on African Americans.   The statistical evidence identified herein is sufficiently supportive of both claims.

28.   The majority of African Americans who took out purchase mortgages in 2005 were put into higher-cost subprime loans, compared with about 17% of Caucasians, according to Federal Reserve data.   As just two examples, the South Side of Chicago, with a large concentration of minority borrowers, has a high concentration of subprime loans and the state's highest foreclosure rate.   And in Boston, where defaults are rising primarily in minority neighborhoods, 73% of high-income African Americans (those making $92,000 to $152,000) received subprime loans in 2005, compared with 17% of Caucasians.

29.   This is consistent with the Association of Community Organizations for Reform Now (ACORN) finding in 2001 that among upper-income African-Americans nationally, 18.05 percent of conventional refinance loans received were from subprime lenders, whereas for upper-income Caucasian homeowners it was only 4.81 percent.   In fact, *upper*-income African American homeowners are more likely to receive a subprime loan while refinancing even when compared to *lower*-income Caucasian homeowners.

30.   While some borrowers in the subprime market are genuine credit risks, African-American borrowers have been targeted and illegally steered into subprime residential mortgage loans.   HSBC is reluctant or refuses to offer these borrowers the prime loans that are offered to Caucasian borrowers with the same qualifications.   Instead, HSBC engages in predatory subprime lending, knowingly making loans with high loan-to-value ratios, in this case to borrowers who qualify for lower-cost or prime loans, in what amounts to a kind of "reverse redlining".   Studies by Freddie Mac and

9

1    Standard & Poor's have found that 20% to 30% of borrowers who receive subprime
2    mortgages could have qualified for traditional mortgages at the lower rates offered by
3    banks to prime borrowers.  This effectively dilutes the equity from the property, places
4    the borrower in jeopardy of default, and puts the borrower in the position of spending
5    years paying off additional loan balances without developing any equity.

6            31.     In September 2005, the Federal Reserve Board concluded that African-
7    Americans were more likely to pay higher prices for these mortgages.  The United
8    States Inspector General then cited that report as showing "significant" differences that
9    made it "clear" that African Americans were "much more likely to get higher-priced
10   loans" than Caucasians, and the FDIC has stated that it does not believe that these
11   significant disparities can be explained away by risk-based pricing, as the lending
12   industry has repeatedly tried to do.

13           32.     Further, the U.S. Department of Housing and Urban Development found
14   that in neighborhoods where at least 80 percent of the population is African American,
15   borrowers were 2.2 times more likely than borrowers in the nation as a whole to
16   refinance with a subprime lender.  In fact, *upper-income* borrowers living in
17   predominately African American neighborhoods are twice as likely as *lower-income*
18   Caucasian borrowers to have subprime loans.

19           33.     HSBC has subjected its African American consumers and members of the
20   NAACP to disparate adverse treatment by imposing terms and conditions for residential
21   mortgage loans that resulted in their paying more for their loans than similarly situated
22   Caucasian customers.

23           34.     HSBC unlawfully steered applicants to less favorable credit products than
24   they qualified for on the basis of race.

25           35.     HSBC had engaged in a policy and practice of actively marketing
26   subprime residential mortgage loan products directly to consumers, without providing

27

Original Class Action Complaint

1   them with sufficient information on how to purchase prime residential mortgage

2   products from HSBC or one of its related entities.

3       36.    HSBC has engaged in policies and practices that provide greater financial

4   compensation for mortgage brokers to steer consumers to subprime residential mortgage

5   products in lieu of prime residential mortgage products from the defendants or one of its

6   related entities.  In fact, for 2006, 71 percent of all subprime loans were originated

7   through brokers.

8       37.    The adverse impact of these policies and practices is felt

9   disproportionately by African American consumers and members of the NAACP,

10  compared to similarly situated Caucasians, as reflected in the substantially higher

11  relative rate at which African Americans receive subprime residential mortgage loans

12  despite the fact that they qualify for prime or "A" paper residential mortgage loans.

13      38.    Based upon the foregoing, HSBC was aware or should have been aware

14  that applications for subprime residential mortgage loans include those made by

15  individuals who would qualify for prime or "A" paper residential mortgage loans.

16      39.    Nonetheless, HSBC had the policy and practice of not providing

17  meaningful review of loan applications to determine whether the applicant qualifies for

18  a prime residential mortgage product offered by the defendant or one of its affiliated

19  entities. While HSBC might review loan applications to determine whether they qualify

20  for the subprime residential mortgage product, HSBC had policies and practices of not

21  reviewing the application to determine if the applicant would qualify for a prime

22  residential mortgage product offered by Ameriquest or one of its affiliated entities.  The

23  adverse effect of this policy was felt disproportionately by African American consumers

24  and members of the NAACP, compared to similarly situated Caucasians, as reflected in

25  their subprime rates.

26

27

Original Class Action Complaint

40.   HSBC subjects its individual African American borrowers to terms and conditions for home mortgage loans that resulted in those borrowers paying more for their loans than similarly situated Caucasian borrowers.

41.   The foregoing policies and practices are facially neutral in that HSBC applies the same policies and practices to all residential mortgage loans.

42.   The foregoing policies and practices have a disproportionately adverse effect on African Americans compared with similarly situated Caucasian applicants because African Americans are subject to a significantly higher likelihood of receiving a subprime residential mortgage loan than Caucasian borrowers when they nonetheless qualify for a prime residential mortgage loan.   Statistical analysis confirms that African Americans are more likely to be placed in subprime loans when they qualify for prime loans, than similarly situated Caucasians.

43.   This statistical analysis goes beyond the data recently required under the Home Mortgage Disclosure Act, and demonstrates a clear pattern of discrimination unexplainable on grounds other than race.

44.   The 2004 HMDA reporting requirements first directed lenders to identify higher-rate loans.   That year, staff to the Board of Governors of the Federal Reserve System analyzed the distribution of these higher-rate loans.   They reported pricing disparities between different racial and ethnic groups even after controlling for a borrower's income, gender, property location, and the loan amount.   For example, after accounting for these differences, African Americans who took a loan to purchase a home were 3.1 times more likely than Caucasian borrowers to receive a higher-rate home loan.   While this Federal Reserve analysis confirmed that African American borrowers were more likely to receive higher-rate loans than white borrowers, the researchers were unable to broadly explore how these disparities were affected by risk factors such as borrowers' credit score, down payment, or ability to document income.

Original Class Action Complaint

1  Then last year, the Center for Responsible Lending produced the first full research
2  report that addresses this limitation.

3      45.    Specifically, the Center developed a database of 177,000 subprime loans
4  by matching loans in HMDA to a private database of subprime mortgages.  This step
5  enabled them to bring together detailed information on mortgage pricing, loan terms,
6  and borrower risk characteristics into a single dataset.  As a result, that study was able to
7  account for those factors and isolate the effects of race and ethnicity in influencing
8  whether a borrower receives a higher-rate loan in the subprime market.

9      46.    The findings were striking, yet consistent with those of the Federal
10 Reserve and other consumer organizations.  The Center found that race and ethnicity –
11 two factors that should play no role in pricing – were significant predictors of whether a
12 subprime loan falls into the higher-rate portion of the market.  Race and ethnicity
13 remained significant predictors even after they accounted for the major factors that
14 lenders list on rate sheets to determine loan pricing.

15     47.    Even after controlling for legitimate loan risk factors, including
16 borrowers' credit score, loan-to-value ratio, and ability to document income, race
17 mattered, and it mattered in a discriminatory way.  African American borrowers
18 continued to face a much greater likelihood of receiving the most expensive subprime
19 loans – even with the same loan type and the same qualifications as their white
20 counterparts.  Across a variety of different loan types, African Americans were
21 commonly 31% to 34% more likely to receive a higher-rate loan than Caucasian
22 borrowers.

23     48.    This data evidences and is indicative of the treatment and impact described
24 herein.

25     49.    Further, HSBC had policies and practices of marketing residential
26 mortgage loans that have initial rates during the first few years of the loan that are
27 substantially lower than the rates that will be charged during the remaining course of the

13

loans.  These rates are often referred to as "teaser" rates or the initial interest rates for "Option ARM" loans.  HSBC knew that the initial or teaser interest rate will increase substantially during the first four years of such residential mortgage loans.

50.   Notwithstanding the fact that HSBC had a non-delegable, statutorily obligated duty to evaluate each applicant's ability to repay the entire loan (and not just the initial or teaser rates), HSBC had policies and practices of evaluating each applicant's ability to pay based upon *only* the lower initial rate.

51.   These policies and practices are facially neutral insofar as HSBC used the same policies and practices for all residential mortgage loan applications.

52.   The foregoing policies and practices have a disproportionately adverse effect on African Americans compared with similarly situated Caucasian applicants.  Statistically, African Americans are more likely to obtain residential mortgage loans that would not satisfy HSBC's loan guidelines if the loan had been evaluated under the anticipated adjusted rates during the first four years of the loan, rather than the low initial interest rate.  This is because African Americans have a much lower mean household income than Caucasians.  Census data indicates that in 2006 African Americans had a mean household income of $31,969 compared to $52,423 for Caucasians.  A policy that evaluates the ability to repay a loan based only on an initial low rate will necessarily result in a disproportionate impact on African Americans since, due to their lower incomes, a disproportionate number will be being stuck in loans they will not be able to repay when the interest rate increases.

53.   The consequences of these policies and procedures have resulted in African Americans being disproportionately given loans that they will not have an ability to repay when the higher rates kick in.  In the event African American homeowners elect to refinance their mortgages (in the unlikely event that they are able to qualify for such refinancing), they must often pay huge pre-payment penalties pursuant to the terms and conditions of the original residential mortgage loan.

14

54.    There is no legitimate business reason justifying each of the aforementioned policies and practices that could not be achieved by a policy that does not have a discriminatory impact or a greatly reduced discriminatory impact.

## **FIRST CAUSE OF ACTION**

### **(Fair Housing Act – 42 U.S.C. § 3601 *et seq.*)**

55.    The NAACP incorporates each and every preceding paragraph stated above, inclusive, as though the same were fully set forth herein.

56.    The Fair Housing Act prohibits mortgage lenders from imposing different terms or conditions on a loan, such as different interest rates, points or fees, on the basis of race. The rights of the Class are protected by the Act.

57.    HSBC's policies and practices have resulted in discrimination with respect to the Class, resulting in economic injury, as particularly stated herein.

58.    By selling subprime residential mortgages to African Americans who qualify for prime residential mortgages at grossly unfavorable terms compared to Caucasians who continue to receive better terms than their African American counterparts, HSBC has discriminated against The Class with respect to their ability to participate in real estate transactions under terms and conditions that violate 42 U.S.C. §3605.

59.    HSBC engaged in the following facially neutral policies and practices that have an adverse disparate impact on African Americans:

      a.  actively marketing subprime residential loan products directly to consumers, without providing applicants with sufficient information on how to purchase prime residential mortgage products from HSBC or one of its related entities;

      b.  providing financial incentives for mortgage brokers to steer consumers to subprime residential mortgage products in lieu of

Original Class Action Complaint

1    prime residential mortgage products from HSBC or one of its

2    related entities;

3    c.   not providing meaningful review of loan applications to determine

4    whether the applicant qualifies for a prime residential mortgage

5    product offered by HSBC or one of its affiliated entities.

6    60.   The foregoing facially neutral policies and practices have a

7    disproportionately adverse effect on African Americans compared with similarly

8    situated Caucasian applicants because African Americans are subject to a significantly

9    higher likelihood of receiving a subprime residential mortgage loan than Caucasian

10   borrowers when they nonetheless qualify for a prime residential mortgage loan.

11   Statistical analysis confirms that African Americans are more likely to be placed in

12   subprime loans when they qualify for prime loans, than comparable situated Caucasians,

13   thus constituting a violation of the Fair Housing Act.

14   61.   HSBC engaged in the following additional facially neutral policies and

15   practices that have an adverse disparate impact on African Americans:

16   a.   marketing residential mortgage loans that have "teaser" rates or

17   the initial interest rates for "Option ARM" loans; and

18   b.   evaluating each applicant's ability to pay based upon *only* the

19   lower initial rate, and not the subsequent adjusted higher rate that

20   will be due under the loan.

21   62.   The foregoing policies and practices have a disproportionately adverse

22   effect on African Americans compared with similarly situated Caucasian applicants.

23   Statistically, African Americans are more likely than Caucasians to obtain residential

24   mortgage loans that would not satisfy HSBC's loan guidelines if the loan had been

25   evaluated under the anticipated adjusted rates during the first four years of the loan,

26   rather than the low initial interest rate.

27

16

63.     There is no legitimate business reason justifying each of the aforementioned policies and practices that could not be achieved by a policy that does not have a discriminatory impact or a greatly reduced discriminatory impact.

64.     As a proximate result of HSBC's violation of this statute, the NAACP and the Class have been actually damaged.

65.     This cause of action arises from continuing violations of this Act.

66.     The NAACP and the Class are entitled to injunctive and declaratory relief.

## SECOND CAUSE OF ACTION

### (Equal Credit Opportunity Act – 15 U.S.C. § 1691 *et seq.*)

67.     The NAACP incorporates each and every preceding paragraph stated above, inclusive, as though the same were fully set forth herein.

68.     The Equal Credit Opportunity Act was first enacted in 1974 as a consumer protection statute prohibiting discrimination in the issuing of credit.  The Act has been broadly construed by the courts in order to make effective its provisions to protect consumers.

69.     HSBC is a creditor within the meaning of 15 U.S.C. § 1691(e).  The mortgage loans offered to NAACP members are credit transactions.  The Act provides that "[i]t shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race."  15 U.S.C. § 1691(a)(1).  Class members are systematically and continuously extended mortgage credit by Defendants on a discriminatory basis.  The rights of the Class are protected by the Act.  HSBC discriminated against the Class and they were economically injured, as particularly stated herein.

70.     HSBC engaged in a pattern and practice of discrimination on the basis of race in the terms and interest rates charged to African American consumers and members of the NAACP.   By selling subprime residential mortgages to African Americans who qualify for prime residential mortgages at a far greater rate than

Original Class Action Complaint

Caucasians, HSBC discriminated against the Class with respect to their ability to participate in real estate transactions under terms and conditions that violate 42 U.S.C. §3605.

71.     HSBC engaged in the following facially neutral policies and practices that have a disproportionately adverse impact on African Americans when compared with Caucasians:

      a.  actively marketing subprime residential loan products directly to consumers, without providing applicants with sufficient information on how to purchase prime residential mortgage products from HSBC or one of its related entities;

      b.  providing financial incentives for mortgage brokers to steer consumers to subprime residential mortgage products in lieu of prime residential mortgage products from HSBC or one of its related entities; and

      c.  not providing meaningful review of loan applications to determine whether the applicant qualifies for a prime residential mortgage product offered by HSBC or one of its affiliated entities.

72.     HSBC engaged in the following additional facially neutral policies and practices that have a disproportionately adverse impact on African Americans when compared with Caucasians:

      a.  marketing residential mortgage loans that have "teaser" rates or the initial interest rates for "Option ARM" loans; and

      b.  evaluating each applicant's ability to pay based upon *only* the lower initial rate, and not the subsequent adjusted higher rate that will be due under the loan.

18

Original Class Action Complaint

73.   There is no legitimate business reason justifying each of the aforementioned policies and practices that could not be achieved by a policy that does not have a discriminatory impact or a greatly reduced discriminatory impact.

74.   As a proximate result of HSBC's violation of this statute, the Class has been actually damaged.

75.   This cause of action arises from continuing violations of this Act.

76.   The NAACP and the Class are entitled to injunctive and declaratory relief.

## THIRD CAUSE OF ACTION

### (Civil Rights Act:  Racial Discrimination 42 U.S.C. §§ 1981, 1982 *et seq.*)

77.   The NAACP incorporates each and every preceding paragraph stated above, inclusive, as though the same were fully set forth herein.

78.   The Civil Rights Act of 1866 and 1870, and later expanded upon in 1991, prohibits racial discrimination in the formation and issuance of contracts, and intentional interference in the purchase and holding of real property.

79.   HSBC intentionally discriminated against the Class by charging them higher interest rates than those charged to similarly-situated Caucasian mortgagees.

80.   By charging higher rates to the Class, HSBC unlawfully discriminated against the Class in (i) formation of contracts, (ii) making, performance, modification, and termination of contracts, and/or (iii) the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship, and in their right to purchase and hold real property.

81.   HSBC's actions violate 42 U.S.C. §§ 1981 and 1982.  As a proximate result of HSBC's systematic violation of this statute, the NAACP and the Class are entitled to the requested relief provided under the Act.

1

## JURY DEMAND

2      The NAACP, individually and in a representative capacity on behalf of the Class,

3   hereby demands a trial by jury on all claims and issues which it has a right for a jury to

4   render judgment.

5

6

## PRAYER

7      WHEREFORE, the NAACP, individually and in its organizational and

8   representative capacity on behalf of the putative Class comprised of African Americans

9   and/or members of the NAACP, prays for entry of judgment as follows:

10
11
      A.      Certifying the putative Class and appointing the NAACP and its counsel
              to represent the Class;

12
13
      B.      A judgment in favor of the NAACP and the putative Class against
              Defendants;

14
15
      C.      Declaring that HSBC's practices, as described herein, violate the Fair
              Housing Act, the Equal Credit Opportunity Act, and the Civil Rights Act;

16
17
18
      D.      A judgment awarding the NAACP and Class Members costs and
              disbursements incurred in connection with this action, including
              reasonable attorneys' fees, expert witness fees and other costs;

19
20
      E.      A judgment granting extraordinary equitable and/or injunctive relief as
              permitted by law or equity;

21
22
      F.      A judgment granting declaratory and injunctive relief and all relief that
              flows from such injunctive and declaratory relief;

23
24
      G.      A judgment or other order granting such other and further relief as the
              Court deems just and proper; and

25
26
27
      H.      Enjoining the complained of conduct and Ordering HSBC to modify its
              lending practices to comport with the law. The NAACP and the Class
              request that the Court exercise its equitable jurisdiction and order HSBC,

Original Class Action Complaint

its agents, subsidiaries, and affiliated companies to cease and desist from the unlawful conduct described above, and hereafter modify their lending practices to conform with statutory requirements.  The NAACP and the Class further request that the Court order HSBC, its agents, subsidiaries, and affiliated companies to establish and publish informative materials and programs to fully inform African Americans about their rights to equal treatment with respect to home loans and subprime loans.  The NAACP further requests that the Court retain jurisdiction on an ongoing basis in order to ensure and, where necessary, enforce compliance.

Dated:  March 13, 2009

Respectfully submitted,

Brian S. Kabateck
KABATECK BROWN KELLNER LLP

NAACP
FEAZELL & TIGHE LLP
LAW OFFICES OF GARY L. BLEDSOE
WEBB, CASON & COVICH, P.C

*Attorneys for Plaintiff, NAACP, on Behalf of Itself and Its Members*

21

Original Class Action Complaint

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**

This case has been assigned to District Judge A. Howard Matz and the assigned discovery Magistrate Judge is Margaret A. Nagle.

The case number on all documents filed with the Court should read as follows:

## CV09- 1759 AHM (MANx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=========================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [_] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [_] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

NATIONAL ASSOCIATION FOR THE
ADVANCEMENT OF COLORED PEOPLE (NAACP),
on Behalf of Itself and All Others Similarly Situated, as well
as on Behalf of the General Public and Acting in the Public
Interest,                                    PLAINTIFF(S)
            v.

HSBC Mortgage Corporation (USA) a corporation,
and HSBC Bank USA, N.A.

DEFENDANT(S).

CASE NUMBER

CV09-01759 AHM (MANx)

**SUMMONS**

TO:     DEFENDANT(S):     HSBC Mortgage Corporation (USA) a corporation, and HSBC Bank USA, N.A.

A lawsuit has been filed against you.

Within   20   days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, _Richard L. Kellner_____, whose address is _644 South Figueora Street, Los Angeles, CA 90017_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated:   MAR 1 3 2009

By: _____
            Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE (NAACP), on Behalf of Itself and All Others Similarly Situated, as well as on Behalf of the General Public and Acting in the Public Interest,    PLAINTIFF(S)<br><br>v.<br><br>HSBC Mortgage Corporation (USA) a corporation, and HSBC Bank USA, N.A.<br><br><br>DEFENDANT(S). | CASE NUMBER<br><br>CV09-01759 AHM (MANx)<br><br><br><br>SUMMONS |

TO:    DEFENDANT(S):    HSBC Mortgage Corporation (USA) a corporation, and HSBC Bank USA, N.A.

A lawsuit has been filed against you.

Within __20__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, _Richard L. Kellner_____, whose address is _644 South Figueora Street, Los Angeles, CA 90017_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

MAR 1 3 2009

Dated: _____          By: _____LA'REE HORN_____

Deputy Clerk

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE (NAACP), on Behalf of Itself and All Others Similarly Situated, as well as on Behalf of the General Public and Acting in the Public Interest | HSBC Mortgage Corporation (USA), a corporation, and HSBC Bank USA, N.A., |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Kabateck Brown Kellner LLP<br>644 South Figueroa Street<br>Los Angeles, CA 90017   Tel. (213) 217-5000 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff    ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☑ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes   ☐ No        ☐ MONEY DEMANDED IN COMPLAINT: $_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
1) Fair Housing Act, 42 U.SC.. Sec.3601, et seq.; 2) Equal Credit Opportunely Act15 U.S.C. Sec. 1691, et seq. and 3) Civil Rights Act, 42 U.S.C. Sec 1981, 1982, et seq.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | IMMIGRATION | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☑ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | | | | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 240 Torts to Land | | | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 290 All Other Real Property | | | | ☐ 871 IRS-Third Party 26 USC 7609 |

**FOR OFFICE USE ONLY:**   Case Number:   ᴳᶜ **CV09-01759**

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

### UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
#### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No  ☑ Yes
If yes, list case number(s): NAACP vs. Ameriquest Mortgage, et al., USDC Case # 8:07-CV-0794 AG (AN)

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)  ☐ A.  Arise from the same or closely related transactions, happenings, or events; or

☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | Baltimore, Maryland |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | San Francisco, CA |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles |  |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR PRO PER):**   _____   Date  March 13, 2009

**Notice to Counsel/Parties:**   The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |